Elizabeth H. Potter (OSB # 105482)
Andrew R. Missel (OSB # 181793)
ADVOCATES FOR THE WEST
3701 SE Milwaukie Ave., Ste. B
Portland, OR 97202
(503) 914-6388
epotter@advocateswest.org
amissel@advocateswest.org


Attorneys for Plaintiff


# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **ADVOCATES FOR THE WEST**, | **Case No.: 3:20-cv-01028** |
| Plaintiff, | |
| v. | **COMPLAINT** |
| **BONNEVILLE POWER ADMINISTRATION**, | |
| Defendant. | |

## INTRODUCTION

1.      Plaintiff Advocates for the West brings suit under the Freedom of Information Act ("FOIA") to compel the Bonneville Power Administration ("BPA") to produce certain records requested by Plaintiff. Plaintiff also asks this Court to enjoin and declare unlawful BPA's policy and practice concerning review of materials that are potentially exempt under FOIA Exemptions 4 and/or 5 (the "Exemption 4 and 5 review policy").

COMPLAINT                                          1

2.      BPA is currently engaged in (or will soon be engaged in) several important decisionmaking processes that promise to have dramatic effects on the environment of the Pacific Northwest—particularly the survival and recovery of several species of fish listed as threatened or endangered under the Endangered Species Act ("ESA"). First, BPA, together with the U.S. Army Corps of Engineers and the Bureau of Reclamation, is in the middle of reevaluating how to operate the Columbia River System, the system of 14 dam and reservoir projects in the Pacific Northwest that provides about a quarter of the region's power and that has had a devastating effect on many of the region's native fish species. Second, BPA is currently deciding whether to join the Western Energy Imbalance Market ("EIM"), a real-time centralized energy market used to dispatch power across the region. Finally, BPA is on the verge of beginning a new "rate case," where it will decide what rates it will charge its customers for power and transmission services.

3.      All of these decisionmaking processes allow for involvement by the public. But in order to participate effectively in these processes, the public must be informed. To that end, Plaintiff—a public interest environmental law firm—has sent several FOIA requests to BPA on behalf of itself and its clients seeking records related to BPA's operations. Plaintiff plans to share these records with the general public and with allied conservation organizations to facilitate their participation in the public processes in which BPA is involved.

4.      Unfortunately, BPA has not complied with FOIA's deadlines in responding to Plaintiff's requests. Worse, BPA's policy for reviewing records potentially exempt from disclosure under FOIA Exemptions 4 and/or 5 promises prolonged delays in responding to Plaintiff's FOIA requests, which will lead to more violations of FOIA's deadlines and impair Plaintiff's—and the public's—ability to access the requested information. BPA will likely be

COMPLAINT                                    2

able to "run out the clock" and avoid releasing records until after the relevant public processes are finished, frustrating the public's ability to participate fully in those processes.

5.      Plaintiff seeks a declaratory judgment that BPA's Exemption 4 and 5 review policy violates FOIA, an injunction prohibiting BPA from continuing to employ that policy when processing requests submitted by Plaintiff, and an order requiring BPA to promptly produce non-exempt records responsive to FOIA requests BPA-2020-00700-F, BPA-2020-00719-F, and BPA-2020-00739-F.

## JURISDICTION AND VENUE

6.      Jurisdiction is proper in this Court under 28 U.S.C. § 1331 because this action arises under the laws of the United States, including FOIA, 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.* In addition, FOIA itself provides a basis for jurisdiction. 5 U.S.C. § 552(a)(4)(B).

7.      Venue is proper in this Court under 5 U.S.C. § 552(a)(4)(B) because the agency records at issue are, on information and belief, located in the District of Oregon at the headquarters of BPA. Venue is proper in the Portland Division because BPA's headquarters are located in Portland.

8.      The federal government waived sovereign immunity in this action pursuant to 5 U.S.C. § 552(a)(4)(B).

9.      Because BPA has failed to make a timely "determination" as to Plaintiff's first three FOIA requests, Plaintiff is deemed to have exhausted administrative remedies with respect to those requests.

COMPLAINT                                    3

## PARTIES

10.     Plaintiff Advocates for the West ("Advocates") is a public interest, non-profit environmental law firm headquartered in Boise, Idaho, with an office in Portland, Oregon. Advocates' mission is to defend western public lands, waterways, and wildlife on behalf of conservation groups and concerned citizens. Advocates is particularly interested in gathering information to inform itself, its clients, its allies, and the public about BPA's activities and how those activities affect threatened and endangered fish species.

11.     Advocates educates the general public about the natural wonders of the West, and about land, resource, and wildlife decisions made by governmental and private entities that affect the natural environment and wildlife. Advocates is effective at increasing public awareness of environmental matters, such as protection of endangered and threatened species, through public education and outreach activities: it employs a full-time Director of Communications and Outreach who helps educate the public about the organization's efforts to protect the American West; it sends regular updates to its mailing list of over 2,000 recipients; it maintains an active social media presence; it routinely disseminates materials through its website; and it regularly engages in activities that attract the attention of the national news media, allowing for wide dissemination of information obtained directly or indirectly from FOIA requests. Advocates also routinely shares information it has gathered with its clients and with allied conservation and environmental organizations.

12.     Defendant Bonneville Power Administration ("BPA") is a federal power marketing administration that is part of the Department of Energy. "BPA is the marketing authority for almost all federally generated electric power in the Pacific Northwest." *Confederated Tribes of Umatilla Indian Reservation v. Bonneville Power Admin.*, 342 F.3d 924,

COMPLAINT                                    4

928 (9th Cir. 2003). BPA is an "agency" within the meaning of 5 U.S.C. § 551 and is subject to FOIA.

## LEGAL BACKGROUND

13.      The goal of FOIA is to ensure that the federal government provides "efficient, *prompt*, and full disclosure of information" to members of the public upon request. *Maydak v. U.S. Dep't of Justice*, 218 F.3d 760, 764 (D.C. Cir. 2000) (citation omitted). "[T]he statute does not condone agency personnel sitting behind accumulating mounds of FOIA requests and requiring each requester to 'take a number' and wait many months . . . for the agency to comply." *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 895 F.3d 770, 789 (D.C. Cir. 2018) (Pillard, J., concurring).

14.      FOIA requires an agency to make a "determination" as to a request within 20 working days (or, in "unusual circumstances," 30 working days). *See* 5 U.S.C. § 552(a)(6)(A) (20-day deadline), § 552(a)(6)(B) ("unusual circumstances" provision). An agency makes a "determination" as to a request by "determin[ing] and communicat[ing] the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents." *Citizens for Responsibility and Ethics in Washington v. Fed. Election Com'n ("CREW")*, 711 F.3d 180, 186–88 (D.C. Cir. 2013). A "determination" must "inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Id.* at 188; *see also* 5 U.S.C. § 552(a)(6)(A)(i)(III). An agency does *not* make a "determination" when it "decide[s] to later decide"—that is, when it "express[es] a future intention to produce non-exempt documents and claim exemptions." *CREW*, 711 F.3d at 185–86. A failure to make a timely determination violates FOIA. *Hajro v. U.S. Citizenship & Immigration Servs.*, 811 F.3d 1086, 1106–07 (9th Cir. 2016); *see also Or. Nat. Desert Ass'n v. Gutierrez*, 409 F. Supp. 2d 1237, 1247–48 (D. Or.

COMPLAINT                                    5

2006) (holding that the "defendants failed to make a timely determination, resulting in an improper withholding under" FOIA), *subsequent judgment rev'd in part on other grounds sub nom. Or. Nat. Desert Ass'n v. Locke*, 572 F.3d 610 (9th Cir. 2009).

15.     An agency must make records "promptly available" after receiving a FOIA request. 5 U.S.C. § 552(a)(3)(A). To make records "promptly available," an agency should release records "within days or a few weeks" of the "determination" deadline, "not months or years." *CREW*, 711 F.3d at 188. A failure to make records "promptly available" violates FOIA. *Long v. I.R.S.*, 693 F.2d 907, 910 (9th Cir. 1982); *Judicial Watch*, 895 F.3d at 781–82.

16.     There are two types of FOIA claims that a requester may bring against an agency: (1) a claim that the agency has violated FOIA in connection with a specific request and (2) a "pattern or practice claim—a 'claim that an agency *policy or practice* will impair the party's lawful access to information in the future.'" *Hajro*, 811 F.3d at 1103 (quoting *Payne Enters., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988)). A FOIA requester may bring a pattern or practice claim for a "pattern of delay in contravention of FOIA's time limits." *Id.* at 1106–07.

## STATEMENT OF FACTS

17.     On April 10, 2020, Plaintiff, along with non-party Columbia Rediviva, sent a FOIA request to BPA. The request sought records related to BPA's decision to sign an "Implementation Agreement" in September 2019 committing it to take certain steps to facilitate its entry into the EIM.

18.     The records sought will shine a light on BPA's participation in the EIM, which could affect the agency's ability to alter its operations to benefit fish and wildlife, particularly several salmon and steelhead trout species listed as endangered or threatened under the ESA.

COMPLAINT                                    6

19.     BPA has still not made a final decision to join the EIM. Right now, BPA is in the process of determining how it will go about joining and participating in the EIM, and is holding public workshops to discuss those issues. BPA will continue to engage the public throughout the next year and a half as it decides whether and how to join the EIM. In particular, BPA will decide certain issues related to its participation in the EIM during its upcoming rate case, which is scheduled to begin in fall 2020.

20.     On April 21, 2020, Plaintiff sent a second FOIA request to BPA. This second request sought records related to BPA's efforts to influence public opinion on the recently released Draft Environmental Impact Statement for the Columbia River System ("CRSO Draft EIS"). The CRSO Draft EIS was prepared pursuant to the National Environmental Policy Act ("NEPA"), a statute that "dictates that federal agencies shall to the fullest extent possible encourage and facilitate public involvement in decisions which affect the quality of the human environment." *WildWest Inst. v. Bull*, 547 F.3d 1162, 1169 (9th Cir. 2008) (citation, internal quotations, and alterations omitted).

21.     Plaintiff is interested in the information sought in the second request because it bears on the integrity of the NEPA public process for the Columbia River System. Plaintiff's clients and partners—as well as the general public—are also interested in this information: they have expended many hours attending hearings, submitting comments on the CRSO Draft EIS, and otherwise participating in the NEPA process, and they need to know whether and how that process has been inappropriately prejudiced by BPA.

22.     On April 23, 2020, BPA acknowledged receipt of both FOIA requests. BPA assigned the first request—concerning the EIM—tracking number BPA-2020-00700-F. BPA

assigned the second request—concerning communications and records related to the CRSO Draft EIS—tracking number BPA-2020-00719-F.

23.    For the first request, BPA stated in its acknowledgment letter that it had received the request on April 10, 2020 and designated the request as "complex" because of the possible need to "review . . . the responsive records for statutory exemptions and possible consults with third parties such as, but not limited to, the U.S. Army Corps of Engineers, U.S. Bureau of Reclamation, and California Independent System Operator." BPA also invoked the "unusual circumstances" safety valve of 5 U.S.C. § 552(a)(6)(B)(i), giving the agency an additional 10 working days to respond to the request.

24.    Given a receipt date of April 10, 2020, BPA was required to make a "determination" as to the first request on or before May 22, 2020. As of the filing of this complaint, BPA has not communicated to Plaintiff the scope of the documents it intends to produce and withhold in response to this request and the reasons for withholding any documents. Nor has BPA informed Plaintiff of its right to seek administrative review of any decision to withhold documents.

25.    On June 15, 2020, after the statutory "determination" deadline had passed, BPA and Plaintiff conferred about the possibility of Plaintiff limiting the scope of the first request. Plaintiff has agreed to limit the scope of that request in order to allow for faster processing.

26.    BPA's letter acknowledging receipt of Plaintiff's first request stated that the agency "estimates the completion of a response to [the] FOIA request by August 24, 2020."

27.    For the second request, BPA stated in its acknowledgment letter that it had received the request on April 21, 2020 and designated the request as "complex" because of a possible need to "review . . . the responsive records for statutory exemptions and possible consults

COMPLAINT                                    8

with BPA's wholesale customers." BPA also invoked the "unusual circumstances" safety valve of 5 U.S.C. § 552(a)(6)(B)(i), giving the agency an additional 10 working days to respond to the second request.

28.      Given a receipt date of April 21, 2020, BPA was required to make a "determination" as to the second request on or before June 3, 2020. As of the filing of this complaint, BPA has not communicated to Plaintiff the scope of the documents it intends to produce and withhold in response to this request and the reasons for withholding any documents. Nor has BPA informed Plaintiff of its right to seek administrative review of any decision to withhold documents.

29.      BPA's letter acknowledging receipt of Plaintiff's second request stated that the agency "estimates the completion of a response to [the] FOIA request by August 27, 2020."

30.      On April 30, 2020, Plaintiff sent a third FOIA request to BPA. This request sought records of BPA's communications with the California Independent System Operator ("CAISO")—the entity that manages the EIM—and the Northwest Power and Conservation Council ("NWPCC") concerning BPA's decision to sign the Implementation Agreement.

31.      This information, like the information sought in the first request, is vital to understanding BPA's decisionmaking process with respect to joining the EIM—a process that is still ongoing and that can still be influenced by Plaintiff, its clients, and allied organizations.

32.      On May 1, 2020, BPA acknowledged receipt of Plaintiff's third FOIA request. BPA assigned the request tracking number BPA-2020-00739-F.

33.      For this third request, BPA stated in its acknowledgment letter that it had received the request on April 30, 2020 and designated the request as "complex" because of the possible need to "review . . . the responsive records for statutory exemptions and possible consults with

third parties—specifically including CAISO and NWPCC." BPA also invoked the "unusual circumstances" safety valve of 5 U.S.C. § 552(a)(6)(B)(i), giving the agency an additional 10 working days to respond to the request.

34.    Given a receipt date of April 30, 2020, BPA was required to make a "determination" as to the third request on or before June 15, 2020. As of the filing of this complaint, BPA has not communicated to Plaintiff the scope of the documents it intends to produce and withhold in response to this request and the reasons for withholding any documents. Nor has BPA informed Plaintiff of its right to seek administrative review of any decision to withhold documents.

35.    BPA's letter acknowledging receipt of Plaintiff's third request stated that the agency "estimates the completion of a response to [the] FOIA request by September 8, 2020."

36.    In the time since BPA acknowledged receipt of Plaintiff's first three FOIA requests, Plaintiff has sent two additional FOIA requests to BPA on behalf of itself and Columbia Rediviva:

        a.    Request BPA-2020-00783-F, submitted on May 15, 2020, seeking records related to BPA's determination that the signing of the EIM Implementation Agreement did not trigger a need for NEPA review; and

        b.    Request BPA-2020-784-F, submitted on May 15, 2020, seeking records related to BPA's plans for complying with its statutory obligations if it joins the EIM.

37.    Like Plaintiff's first three FOIA requests, these two requests seek information that is vital to ensure that Plaintiff and its allies and clients can meaningfully participate in ongoing or

COMPLAINT                                        10

imminent public processes during which BPA will make important decisions that will have substantial effects on the Pacific Northwest's environment.

38.     BPA has acknowledged receipt of these two requests:

     a.  For request BPA-2020-00783-F, BPA gave an estimated completion date of November 4, 2020, and cited the possible need to "review . . . the responsive records for statutory exemptions and possible consults with third parties" as reasons for designating the request as "complex"; and

     b.  For request BPA-2020-00784-F, BPA gave an estimated completion date of November 4, 2020, and cited the possible need to "review . . . the responsive records for statutory exemptions and possible consults with third parties" as reasons for designating the request as "complex."

39.     In an email sent on June 5, 2020, BPA confirmed that, as of that date, it had not yet finished reviewing records responsive to Plaintiff's first FOIA request and had not yet gathered records responsive to Plaintiff's remaining FOIA requests.

40.     BPA's repeated references in its acknowledgment letters to "consults with third parties," including other federal agencies, implicate FOIA Exemptions 4 and 5. Exemption 4 shields from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). Exemption 5 shields from disclosure "inter-agency . . . memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency . . . ." *Id.* § 552(b)(5).

41.     For each of Plaintiff's requests, there is a roughly four-to-six-month gap from receipt of the request to the anticipated response date, and a roughly three-to-four-month delay from the statutory "determination" deadline until the anticipated response date. This is consistent

COMPLAINT                                         11

with Plaintiff's experience with FOIA requests it sent to BPA on behalf of Columbia

Riverkeeper ("CRK"): Advocates sent two FOIA requests to BPA on behalf of CRK in late

November 2019 and received anticipated response dates of late March 2020.

    42.    BPA's delays in responding to all these requests stem in large part from its

Exemption 4 and 5 review policy. BPA explained how this policy works for Exemption 4

material in an email sent in connection with one of the requests submitted by Plaintiff on behalf

of CRK:

> To the extent that the responsive records do contain third party confidential
> commercial information, BPA is required to consult with any third-party
> information submitters and provide them with an opportunity to formally object to
> the public release of their information. BPA's Office of General Counsel (OGC)
> will be tasked with making a determination on any objections received from third
> parties. That outreach to the third parties (which includes a thirty day window for
> objections to be submitted), an OGC analysis of potential objections received, and
> a formal determination on any objections, has historically taken about ninety days
> to complete.

Email of January 9, 2020 from Candace Palen, BPA FOIA/Privacy Act Officer to Andrew

Missel, Staff Attorney at Advocates for the West.

    43.    On information and belief, BPA has a lengthy process for reviewing material

originating from other federal agencies that may be exempt under Exemption 5 that is similar to

the Exemption 4 process described in the January 9, 2020 email.

    44.    Though BPA claims that the review process for Exemption 4 material "has

historically taken about ninety days to complete," the process regularly leads to delays much

longer than a few months. For instance, BPA has still not made a final "determination" as to the

two FOIA requests sent by Plaintiff on behalf of CRK. The anticipated completion date for those

requests is now August 4, 2020—some seven months after the statutory "determination"

deadlines and nearly nine months after the requests were received by the agency. BPA has

explicitly cited the need to conduct Exemption 4 review as a reason for the delays in responding to those requests. In fact, as recently as June 11, 2020, BPA informed Plaintiff that the delay in fully responding to one of the requests sent on behalf of CRK is due to the ongoing review of material potentially exempt under Exemption 4.

45.     On information and belief, BPA routinely waits to make a "determination" until the completion of its Exemption 4 and 5 review process. As BPA explained in an email regarding one of the requests sent on behalf of CRK, "a formal determination letter" is issued "[w]hen the FOIA response process is completed." Email of January 9, 2020 from Candace Palen, BPA FOIA/Privacy Act Officer to Andrew Missel, Staff Attorney at Advocates for the West. Accordingly, BPA's estimated response date is, in fact, the estimated date for issuing a "determination."

46.     Other examples of delayed responses to FOIA requests caused by BPA's Exemption 4 and 5 review policy include:

      a.  FOIA Request BPA-2019-00412-F: received on January 31, 2019; final response on November 12, 2019.

      b.  FOIA Request BPA-2018-00081-F: received on October 10, 2017; final response on June 29, 2018.

      c.  FOIA Request BPA-2017-00501-F: received on January 19, 2017; final response on September 26, 2017.

      d.  FOIA Request BPA-2017-00069-F: received on October 12, 2016; final response on September 14, 2018.

      e.  FOIA Request BPA-2017-00058-F: received on October 11, 2016; final response on July 17, 2018.

COMPLAINT                    13

47.     Additionally, in the one published judicial decision concerning BPA's response to a FOIA request, the agency delayed its response to the request due to its Exemption 4 and 5 review policy:

> [O]n February 18, 2015, [BPA] sent a letter . . . noting the complexity of the request[] and estimating completion by September 30, 2015. On September 28, 2015, BPA sent another letter . . . advising of its need to submit certain records to third-party entities for review and thus 'extending the target date for BPA's response to your request to March 31, 2016.'

*A Better Way for BPA v. U.S. Dep't of Energy Bonneville Power Admin.*, 890 F.3d 1183, 1185 (9th Cir. 2018).

48.     Given BPA's history of delayed responses to requests that trigger its Exemption 4 and 5 review policy—including BPA's delayed responses to the requests sent by Plaintiff on behalf of CRK—Plaintiff expects that BPA will miss the determination deadlines for Plaintiff's fourth and fifth FOIA requests, as well as future requests that Plaintiff intends to send. Plaintiff also expects that BPA will not finish releasing records responsive to Plaintiff's requests until many months, or even years, after the determination deadlines have passed.

49.     These delays are not merely inconvenient—they impair the ability of Plaintiff, its clients and allies, and the general public to participate meaningfully in the public processes during which BPA will make important decisions affecting the Pacific Northwest's environment.

## FIRST CLAIM FOR RELIEF
## FAILURE TO MAKE A TIMELY "DETERMINATION" AS TO BPA-2020-00700-F

50.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 49, inclusive.

51.     BPA received FOIA request BPA-2020-00700-F on April 10, 2020. Because BPA invoked the "unusual circumstances" safety valve in 5 U.S.C. § 552(a)(6)(B)(i), BPA had 30

working days to respond to the request. Therefore, BPA was required to make a "determination" as to the request on or before May 22, 2020.

52.    BPA did not make a determination on or before May 22, 2020. As of the date of this complaint, BPA has not yet made a determination, nor has it released any records.

53.    By failing to make a timely determination as to Plaintiff's first request, BPA has violated and continues to violate FOIA.

## SECOND CLAIM FOR RELIEF
## FAILURE TO PROMPTLY RELEASE RECORDS AS TO BPA-2020-00700-F

54.    Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 49, inclusive.

55.    BPA does not anticipate releasing any records in response to Plaintiff's first FOIA request until August 24, 2020, at the earliest, which is more than four months after Plaintiff submitted the request. Such a delay in releasing records violates FOIA's requirement that an agency make records "promptly available" upon request.

## THIRD CLAIM FOR RELIEF
## FAILURE TO MAKE A TIMELY "DETERMINATION" AS TO BPA-2020-00719-F

56.    Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 49, inclusive.

57.    BPA received FOIA request BPA-2020-00719-F on April 21, 2020. Because BPA invoked the "unusual circumstances" safety valve in 5 U.S.C. § 552(a)(6)(B)(i), BPA had 30 working days to respond to the request. Therefore, BPA was required to make a "determination" as to the request on or before June 3, 2020.

58.     BPA did not make a determination on or before June 3, 2020. As of the date of

this complaint, BPA has not yet made a determination, nor has it released any records. As of

June 5, 2020, BPA was still gathering records.

59.     By failing to make a timely determination as to Plaintiff's second request, BPA

has violated and continues to violate FOIA.

## FOURTH CLAIM FOR RELIEF
## FAILURE TO PROMPTLY RELEASE RECORDS AS TO BPA-2020-00719-F

60.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1

through 49, inclusive.

61.     BPA does not anticipate releasing any records in response to Plaintiff's second

FOIA request until August 27, 2020, at the earliest, which is more than four months after

Plaintiff submitted the request. Such a delay in releasing records violates FOIA's requirement

that an agency make records "promptly available" upon request.

## FIFTH CLAIM FOR RELIEF
## FAILURE TO MAKE A TIMELY "DETERMINATION" AS TO BPA-2020-00739-F

62.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1

through 49, inclusive.

63.     BPA received FOIA request BPA-2020-00739-F on April 30, 2020. Because BPA

invoked the "unusual circumstances" safety valve in 5 U.S.C. § 552(a)(6)(B)(i), BPA had 30

working days to respond to the request. Therefore, BPA was required to make a "determination"

as to the request on or before June 15, 2020.

64.     BPA did not make a determination on or before June 15, 2020. As of the date of

this complaint, BPA has not yet made a determination, nor has it released any records. As of

June 5, 2020, BPA was still gathering records.

COMPLAINT                                    16

65.     By failing to make a timely determination as to Plaintiff's third FOIA request, BPA has violated and continues to violate FOIA.

## SIXTH CLAIM FOR RELIEF
## FAILURE TO PROMPTLY RELEASE RECORDS AS TO BPA-2020-00739-F

66.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 49, inclusive.

67.     BPA does not anticipate releasing any records in response to Plaintiff's third FOIA request until September 8, 2020, at the earliest, which is more than four months after Plaintiff submitted the request. Such a delay in releasing records violates FOIA's requirement that an agency make records "promptly available" upon request.

## SEVENTH CLAIM FOR RELIEF
## UNLAWFUL PATTERN OR PRACTICE OF DELAY

68.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 49, inclusive.

69.     BPA regularly misses the statutory deadline for making a "determination" as to requests that trigger its Exemption 4 and 5 review policy.

70.     BPA regularly fails to make responsive records "promptly available" to requests that trigger its Exemption 4 and 5 review policy.

71.     BPA claims that its review process for Exemption 4 material "has historically taken about ninety days to complete," but the process regularly leads to delays much longer than a few months.

72.     BPA has already missed the statutory deadlines for making "determinations" as to Plaintiff's first three FOIA requests. Plaintiff's past experiences—as well as the experiences of

COMPLAINT                                         17

other requesters—suggest that it is very likely that BPA will not make "determinations" as to these requests for many months.

73.    Each of the "target" response dates set by BPA for Plaintiff's first three requests is more than four months from the date BPA received the request. Such delays violate FOIA absent an adequate justification by BPA. Moreover, Plaintiff's past experiences—as well as the experiences of other requesters—suggest that BPA will very likely miss those target dates and will not release records for many months, if not years.

74.    These delays are already impairing and will continue to impair Plaintiff's ability to access and use important information about BPA. These delays are caused, in part, by BPA's Exemption 4 and 5 review policy.

75.    Plaintiff has submitted two additional FOIA requests to BPA. The statutory "determination" deadlines have not yet passed for these requests, but, because of the agency's Exemption 4 and 5 review policy, it is almost certain that BPA will fail to make "determinations" as to these requests by the statutory deadlines, and will instead miss the deadlines by several months, at least. It is also almost certain that BPA will not release documents responsive to those requests for an unreasonably long time. Indeed, the "target" date set by BPA for responding to those requests is November 4, 2020, nearly six months after BPA received the requests.

76.    Plaintiff plans on submitting more FOIA requests to BPA, at least some of which will seek materials that will trigger BPA's Exemption 4 and 5 review policy.

77.    BPA's Exemption 4 and 5 review policy has impaired and will in the future impair Plaintiff's ability to access information to which it is entitled under FOIA.

COMPLAINT                                     18

WHEREFORE, Plaintiff prays for relief as set forth below.

## PRAYER FOR RELIEF

A.      Adjudge and declare that BPA's Exemption 4 and 5 review policy violates FOIA;

B.      Enjoin BPA from employing its Exemption 4 and 5 review policy when processing any FOIA requests submitted by Plaintiff, and order BPA to instead employ a process that complies with FOIA's deadlines;

C.      Order BPA to immediately release all non-exempt records responsive to Plaintiff's first three FOIA requests (BPA-2020-00700-F, BPA-2020-00719-F, and BPA-2020-739-F);

D.      Enter such other declaratory relief, and temporary, preliminary, or permanent injunctive relief as may be prayed for hereafter by Plaintiff;

E.      Award Plaintiff its reasonable costs, litigation expenses, and attorneys' fees associated with this litigation pursuant to FOIA and/or any other provision of law allowing for the recovery of such expenses; and

F.      Grant such further relief as the Court deems just and proper in order to provide Plaintiff with relief and protect the public interest.

Dated: June 26, 2020                                    Respectfully submitted,

                                                        /s/ Andrew R. Missel
                                                        Elizabeth H. Potter
                                                        Oregon Bar # 105482
                                                        Andrew R. Missel
                                                        Oregon Bar # 181793
                                                        **ADVOCATES FOR THE WEST**
                                                        3701 SE Milwaukie Ave., Ste. B
                                                        Portland, OR 97202
                                                        (503) 914-6388
                                                        epotter@advocateswest.org
                                                        amissel@advocateswest.org

COMPLAINT                          19