UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| ADVOCATES FOR THE WEST, | Case No. 3:20-cv-01028-AC |
| Plaintiff, | OPINION AND ORDER |
| v. | |
| BONNEVILLE POWER ADMINISTRATION, | |
| Defendant. | |

ACOSTA, Magistrate Judge:

Plaintiff Advocates for the West ("Advocates") brings a claim against Bonneville Power Administration ("BPA") for violations of the Freedom of Information Act ("FOIA"). Advocates filed a motion for partial summary judgment seeking declaratory and injunctive relief ("Motion"). The Motion is GRANTED in part an DENIED in part.[1]

\\\\\

---

[1] Both parties consented to jurisdiction by U.S. Magistrate Judge.

*Background*

Advocates is a public interest environmental non-profit based in Boise, Idaho, operating an office in Portland, Oregon. Advocates' stated purpose is to protect the natural environment of the West, in part by keeping the public informed about government and private actions that affect land, water, and wildlife. (First Am. Compl., ECF No. 8, ¶¶ 10-11.) BPA is a federal agency within the U.S. Department of Energy.

In the spring of 2020, Advocates monitored "two ongoing public processes involving BPA." (Pl.'s Mot., ECF No. 21, at 10.) One process involved BPA's ongoing consideration of joining the Western Energy Imbalance Market ("EIM"), which joinder Advocates contended "could affect the agency's ability to alter its operations to benefit fish and wildlife, particularly several salmon and steelhead trout species listed as endangered or threatened under the [Endangered Species Act ('ESA')]." (First Am. Compl. ¶ 19.) The second process involved BPA's involvement in the Columbia River System[2] operations, namely a new biological opinion ("CRSO BiOp") and environmental impact statement ("CRSO EIS"),[3] because operation of the Columbia River System can affect native fish species. (*Id.* ¶ 2.)

On April 10, 2020, Advocates sent BPA its first FOIA request for information related to the EIM decision. (Declaration of Andrew Missel dated October 5, 2020, ECF No. 22 ("First Missel Decl."), Ex. 9, at 1-6.) On April 21, 2020, Advocates sent a second request for information regarding the CRSO BiOp and CRSO EIS. (*Id.* Ex. 10, at 1-7.) BPA received both requests the

---

[2] Columbia River System refers to "the system of 14 dam and reservoir projects in the Pacific Northwest that provides about a quarter of the region's power." (First Am. Compl. ¶ 2.)

[3] Biological opinions, 16 U.S.C. § 1536(b), and environmental impact statements, 42 U.S.C. § 4332(C), are documents to be prepared by actors within the federal government when the government is involved in action that may impact the natural environment and/or wildlife.

day they were sent and notified Advocates of their receipt via acknowledgment letters on April 23, 2020. (Pl.'s Mot. at 12); (First Missel Decl. Ex. 9 at 7; Ex. 10, at 8). Advocates sent a third request on April 30, 2020 (First Missel Decl. Ex. 11, at 1-6) and a fourth (*id.* Ex. 12, at 1-6) and fifth request (*id.* Ex. 13, at 1-7) on May 15, 2020. All three requests seek information regarding the EIM decision. BPA received each request the same day it was sent. (*Id.* Ex. 11, at 7; Ex. 12, at 7; Ex. 13, at 8.) BPA notified Advocates of receipt via acknowledgement letters on May 1, 2020 for the third request and May 28, 2020 for the fourth and fifth requests. (*Id.* Ex. 11, at 7-8; Ex. 12, at 7-8; Ex. 13, at 8-9.)

The acknowledgment letters contained estimated completion dates for each request, designated each request as "complex"[4] under the agency's request review process, and claimed the ten-day extension for determination due to "unusual circumstances." (*Id.* Ex. 9, at 7-8; Ex. 10, at 8-10; Ex. 11, at 7-8; Ex. 12, at 7-8; Ex. 13, at 8-9); *see infra* Part IA (explaining "unusual circumstance" designations). Each estimated completion date was multiple months beyond the thirty-working-day deadline for determinations under unusual circumstances. (*Id.* Ex. 9, at 7-8; Ex. 10, at 8-10; Ex. 11, at 7-8; Ex. 12, at 7-8; Ex. 13, at 8-9); *see infra* Part IA (explaining determination deadlines).

The acknowledgement letters did not "provide[] Plaintiff an opportunity to limit the scope of the request so that it could be processed within FOIA's time limits, nor did any of the letters give Plaintiff an opportunity to arrange with BPA an alternative time frame for processing the request or a modified request . . . [or notify] Plaintiff of the right to seek dispute resolution services

---

[4] BPA has a "multi-track" process for reviewing FOIA requests under which BPA may designate requests "complex" "if they require significant agency time or resources to process." (First Missel Decl. Ex. 9, at 7.) BPA maintains a complex queue and a simple queue "and each queue is processed on its own first-in-first-out basis." (*Id.*)

Page 3 – OPINION AND ORDER

from the Office of Government Information Services." (Pl.'s Mot. at 13); (*see* First Missel Decl. Ex. 9, at 7-8; Ex. 10, at 8-10; Ex. 11, at 7-8; Ex. 12, at 7-8; Ex. 13, at 8-9). BPA does not contend these letters constitute determinations under FOIA.

The parties communicated over the following months to facilitate the responses. (First Missel Decl. ¶¶ 43-55.) Though Advocates declined to narrow its request, it did provide BPA with search terms on July 30, 2020 to prioritize "batches" of responsive documents. (Pl.'s Mot. at 16); (First Missel Decl. ¶ 50). BPA extended the estimated completion dates for each request. (First Missel Decl. Ex. 9, at 9-10; Ex. 10, at 11-12; Ex. 11, at 9-10); (Declaration of Andrew Missel dated November 16, 2020, ECF No. 29 ("Second Missel Decl."), Ex. 27, Ex. 28); (First Supp. Compl., ECF No. 33, ¶ 65). As of January 4, 2021, BPA estimated it would complete the third request in November 2021 and the remaining four requests in April 2022. (First Supp. Compl. ¶ 65.)

Advocates filed this suit on June 26, 2020, amidst ongoing communications with BPA. (Compl., ECF No. 1.) Advocates amended its complaint on July 24, 2020. (First Am. Compl.) Advocates claims BPA violated FOIA by failing to make timely "determinations" regarding each of the five requests and failing to promptly release records responsive to each of the five requests. (*Id.* ¶¶ 60-89.) Advocates also claims BPA's process for reviewing FOIA requests violates FOIA by establishing an "unlawful pattern or practice of delay." (*Id.* at 21, emphasis omitted.) The complaint seeks declaratory and injunctive relief and an order requiring BPA to produce records. (*Id.* at 22-23.)

Advocates sent BPA a sixth FOIA request on September 22, 2020. (Second Missel Decl. ¶ 5.) The sixth request seeks information regarding BPA's power contracts with customers. (First Supp. Compl. ¶ 60); (Second Missel Decl. Ex. 30). Again, BPA notified Advocates via

Page 4 – OPINION AND ORDER

acknowledgement letter that it received the request on September 22, 2020, designated it a "complex" request, and invoked the "unusual circumstances" extension. (Second Missel Decl. Ex. 30.) The acknowledgment letter estimated a response date of October 21, 2021. (*Id.*) Again, the letter "did not provide Plaintiff an opportunity to limit the scope of the request so that it could be processed within FOIA's time limits or give Plaintiff an opportunity to arrange with BPA an alternative time frame for processing the request or a modified request. Nor did the acknowledgment letter notify Plaintiff of the right to seek dispute resolution services . . . ." (First Supp. Compl. ¶ 62); (*see* Second Missel Decl. Ex. 30.) Advocates filed a supplemental and amended complaint on January 4, 2021. (First Supp. Compl.) The First Supplemental Complaint alleges BPA violated FOIA by failing to issue a determination and failing to promptly produce responsive records regarding the sixth request, just as it had done with the previous five requests. (*Id.* ¶¶ 105-110.)

On October 2, 2020, Advocates moved for partial summary judgment, asking the court to enter declaratory judgment that BPA violated FOIA's determination and prompt production requirements and to order BPA to release 5,000 responsive pages each month. (Pl.'s Mot. at 1.) BPA responded on November 2, 2020 (Def.'s Resp., ECF No. 25), and Advocates filed a reply on November 16, 2020 (Pl.'s Reply, ECF No. 28). During this time, the parties continued to communicate, including telephone status conferences on September 21, 2020 (First Status Conference, ECF No. 24) and March 11, 2021 (Minutes of Proceedings, ECF No. 42). BPA filed a Status Report on January 4, 2021 (First Status Report, ECF No. 34), and a Second Status Report on March 1, 2021 (Second Status Report, ECF No. 38). BPA provided updated estimated completion dates in its Second Status Report, estimating it would fully respond to the first, second, third, fourth, fifth, and sixth requests on May 6, 2021; September 24, 2021; November 21, 2021;

Page 5 – OPINION AND ORDER

August 31, 2021; April 26, 2021; and October 21, 2021, respectively. (Second Status Report Apx. A.)

At a telephone status conference on March 11, 2021, the court ordered BPA to produce all EIM-related documents responsive to the requests by July 30, 2021. (Minutes of Proceedings.)

*Legal Standard*

A court grants summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a) (2019). District courts typically resolve FOIA cases on summary judgment. *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 989 (9th Cir. 2016). An agency that has withheld records in response to a FOIA request has the burden "to sustain its action." 5 U.S.C. § 552(a)(4)(B). A district court reviews the agency's denial de novo. *Id.* The district court may enjoin an agency from withholding records or order the release of improperly withheld records. *Id.* "In utilizing its equitable powers to enforce the provisions of the FOIA, the district court may consider injunctive relief where appropriate." *Long v. U.S. I.R.S.*, 693 F.2d 907, 909 (9th Cir. 1982). The court may also grant declaratory relief. *Hajro v. U.S. Citizenship & Immigr. Servs.*, 811 F.3d 1086, 1101 (9th Cir. 2016); *see also W. Res. Legal Ctr. v. Nat'l Oceanic & Atmospheric Admin.*, No. 3:19-cv-01119-AC, 2020 WL 6829767, at *7 (D. Or. Nov. 20, 2020) (holding plaintiff was entitled to declaratory judgment that defendant agency failed to promptly produce records).

*Discussion*

Advocates' motion raises two distinct questions: first, did BPA violate FOIA; and second, if so, what is the appropriate remedy? (*See* Pl.'s Reply at 10.) The court addresses each question in turn.

I.   Advocates is Entitled to Declaratory Relief Stating BPA Violated FOIA's Determination Requirement and FOIA's Prompt Production Requirement

   A.   *BPA Failed to Make Timely Determinations for Each of Advocates' Requests*

An agency that receives a proper FOIA request must determine if it will comply with the request and "immediately" notify the requester of the decision. 5 U.S.C. § 552(a)(6)(A)(i). The agency must issue its "determination" within twenty days, excluding weekends and legal public holidays. *Id.* The agency must notify the requester of its determination in writing. 15 C.F.R. § 4.7(c) (2020). Interim responses do not constitute determinations. *Id.* § 4.7(b). The twenty-day response period begins "on the date on which the request is first received by the appropriate component of the agency." 5 U.S.C. § 552(a)(6)(A)(ii). An agency may request a one-time written clarification from the requester. 15 C.F.R. § 4.6(c).

When an agency grants a request in whole or in part, it must notify the requester of any fees charged and of the requester's right to seek assistance from the agency. *Id.* § 4.7(c)(1). When an agency makes an adverse determination, such as denying a request or determining a record is exempt, the denial must include a brief statement explaining the reasons for the denial. *Id.* § 4.7(c)(2)-(3). An agency that makes an adverse determination must notify the requester of his or her right to appeal. 5 U.S.C. § 552(a)(6)(A)(i)(III)(aa).

An agency may extend the twenty-day response period by ten days for "unusual circumstances." *Id.* § 552(a)(6)(B). An agency experiences unusual circumstances when: (1) the agency must search for and collect requested records from separate offices, such as field facilities; (2) the agency must search for, collect, and examine a large volume of distinct records in a single request; or (3) the agency must consult with another agency that has substantial interest in the determination. *Id.* The agency must notify the requester in writing of the unusual

circumstances that warrant the extension and provide the date on which the agency expects to issue a determination. *Id.*

In general, "a FOIA requester must exhaust administrative appeal remedies before seeking judicial redress." *Citizens for Responsibility & Ethics in Washington v. FEC*, 711 F.3d 180, 182 (D.C. Cir. 2013) ("*CREW*"). However, if an agency "fails to comply with the applicable time limit provisions" of the FOIA statute, the requester "shall be deemed to have exhausted his administrative remedies with respect to such request." § 552(a)(6)(C)(i). In other words, "[t]o trigger the exhaustion requirement, an agency must make and communicate its 'determination' whether to comply with a FOIA request – and communicate 'the reasons therefor' – within 20 working days of receiving the request, or within 30 working days in 'unusual' circumstances." *CREW*, 711 F.3d at 182 (quoting § 552(a)).

For an agency communication to constitute a determination, an agency must: "(i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Id.* at 188.

There is no genuine dispute of material fact that the acknowledgement letters BPA sent in response to requests one through six fail to meet the three *CREW* elements. None of the letters reflect that BPA had begun the process of gathering documents. (*See* First Missel Decl. Ex. 9, at 7-8; Ex. 10, at 8-10; Ex. 11, at 7-8; Ex. 12, at 7-8; Ex. 13, at 8-9); (*see* Second Missel Decl. Ex. 30). None of the letters mention the proposed scope of documents to be produced or withheld. (*See* First Missel Decl. Ex. 9, at 7-8; Ex. 10, at 8-10; Ex. 11, at 7-8; Ex. 12, at 7-8; Ex. 13, at 8-9); (*see* Second Missel Decl. Ex. 30). None of the letters inform Advocates of its right to appeal an

adverse determination. (*See* First Missel Decl. Ex. 9, at 7-8; Ex. 10, at 8-10; Ex. 11, at 7-8; Ex. 12, at 7-8; Ex. 13, at 8-9); (*see* Second Missel Decl. Ex. 30).

BPA does not suggest the acknowledgment letters, or any other communications with Advocates, satisfy FOIA's determination requirement. Rather, BPA claims summary judgment is improper at this time and Advocates is not entitled to a declaratory judgment on liability because "the statutory relief that flows from [Advocates'] claim is judicial supervision of BPA's response . . . not summary judgment." (Def.'s Resp. at 7.) The court disagrees. "Most FOIA cases are resolved by the district court on summary judgment, with the district court entering judgment as a matter of law." *Animal Legal Def. Fund*, 836 F.3d at 989. FOIA's "plain language clearly contemplates declaratory . . . relief." *Hajro*, 811 F.3d at 1101. In this District, an agency's failure to make a determination within the statutory twenty-day period, or thirty-day period for "unusual circumstances," is itself a violation of FOIA. *Oregon Nat. Desert Ass'n v. Gutierrez*, 409 F. Supp. 2d 1237, 1248 (D. Or. 2006) (citing *Gilmore v. U.S. Dep't of Energy*, 33 F. Supp. 2d 1184, 1188 (N.D. Cal. 1998) (holding agency "failure to make a timely determination . . . constituted an improper withholding of . . . documents in violation of FOIA")).

There is ample caselaw in this circuit supporting declaratory relief upon summary judgment for FOIA violation. *See Sierra Club v. U.S. Env't Prot. Agency*, No. 18-cv-03472-EDL, 2018 WL 10419238 (N.D. Cal. Dec. 26, 2018) (granting plaintiff's partial motion for summary judgment declaring defendant violated FOIA by failing to issue timely determinations); *Ecological Rights Found. v. Fed. Emergency Mgmt. Agency*, No. 16-cv-05254-MEJ, 2017 WL 5972702, at *10 (N.D. Cal. Nov. 30, 2017) (granting plaintiff declaratory relief on summary judgment when defendant agency "repeatedly failed to comply with its statutory responsibility to respond fully to [plaintiff's] FOIA requests within the statutory timeframe"); *W. Res. Legal Ctr.*, 2020 WL

Page 9 – OPINION AND ORDER

6829767, at *7 (stating plaintiff is "entitled to a declaratory judgment" regarding defendant's failure to promptly produce records); *Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 85 F. Supp. 3d 1074 (N.D. Cal. 2015) (granting partial summary judgment declaring defendant in violation of FOIA statutory deadlines).

There is no genuine issue of material fact that BPA failed to issue a determination within thirty days of receiving each of Advocates' requests and that such failure constitutes a FOIA violation. Therefore, Advocates is entitled to summary judgment declaring BPA violated FOIA's determination requirement.

B. *BPA Failed to Promptly Produce Records*

An agency that receives a proper request for records must make records "promptly available to any person." 5 U.S.C. § 552(a)(3)(A). When a request involves a large volume of records or requires searching multiple locations, the agency must provide the requester with interim responses, to the extent feasible. 15 C.F.R. § 4.7(b).

If the agency does not make a timely determination, the requester may file an action in district court. 5 U.S.C. § 552(a)(6)(C)(i). The district court "has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* § 552(a)(4)(B). A requester, however, cannot "challenge the individual timeliness of production or the Agency's compliance with statutory or regulatory guidelines with respect to documents that have been produced." *Cmty. Ass'n for Restoration of the Env't, Inc. v. EPA*, 36 F. Supp. 3d 1039, 1048 (E.D. Wash. 2014). A district court may allow the agency additional time to review the records if an agency demonstrates that "exceptional circumstances exist and that the agency is exercising due diligence in responding to the request."

§ 552(a)(6)(C)(i). "[A] delay that results from a predictable agency workload of requests" does not typically constitute an exceptional circumstance. § 552(a)(6)(C)(ii).

An agency is not required to produce all records when it makes its determination. *CREW*, 711 F.3d at 185-86. The D.C. Circuit applies the "promptly available" standard based on the circumstances of each case, which usually requires production "within days or a few weeks of a 'determination,' not months or years." *Id.* at 188. The court acknowledged that "the agency may still need some additional time to physically redact, duplicate, or assemble for production the documents that it has already gathered and decided to produce. The agency must do so and then produce the records 'promptly.'" *Id.* at 189.

Despite BPA's contention to the contrary, summary judgment declaring agency violation of FOIA is proper. *Supra* Part IA. Declaratory judgment is proper even regarding the EIM records which the court has already ordered to be produced by July 30, 2021. *Oregon Nat. Desert Ass'n*, 409 F. Supp. 2d at 1248 (holding "an untimely response is a violation of FOIA, regardless of the final outcome of the request"). After invoking the "unusual circumstances" ten-day extension, BPA's determinations were due on May 22, 2020; June 3, 2020; June 12, 2020; June 29, 2020; and November 4, 2020. BPA was required to produce responsive records "within days or a few weeks" of these determination deadlines. *CREW*, 711 F.3d at 188-89. Clearly, BPA failed to do so. As of BPA's March 1, 2021 Second Status Report, the agency had not fully responded to any of Advocates' six requests. (Second Status Report ¶¶ 2-7.) At that time, over ten months had passed since BPA received Advocates' first request and over five months had passed since BPA received Advocates' sixth request.

BPA attempts to excuse its delay in producing responsive records by contending it "simply cannot release 5,000 pages per month." (Def.'s Resp. at 6.) BPA instead proposes a production

Page 11 – OPINION AND ORDER

rate of 1,000 pages per month. (Id.) BPA states Advocates' requests are of a "sweeping" scope (*id.* at 25), with an average of 4,316 responsive pages per request, compared to 1,823 responsive pages for other requests (*id.* at 13); (Palen Decl., ECF No. 27, ¶ 26). BPA asserts that the size of the requests, staff and attorney-advisor workloads, and the strain COVID-19 has placed on the agency make it impossible for staff to respond to the requests within the statutory time frame. (Def.'s Resp. at 13, 23, 25.) The court is sympathetic to the pressures the pandemic has placed on government agencies and acknowledges that it has slowed the pace of work generally, but such considerations do not excuse statutory timelines under FOIA. "Congress wrote a tough statute on agency delay in FOIA compliance" and the court is not at liberty to provide exceptions to the requirements set out by Congress. *Fiduccia v. U.S. Dep't of Justice*, 185 F.3d 1035, 1041 (9th Cir. 1999). An agency's "limited resources do not relieve it of its statutory obligation to promptly provide requested documents." *Sierra Club*, 2018 WL 10419238, at *6. The fact that "agencies' resources are heavily taxed by the quantity and depth of FOIA requests . . . does not grant the agency carte blanche to repeatedly violate congressionally mandated deadlines." *Our Children's Earth Found.*, 85 F. Supp. 3d at 1090.

FOIA requires BPA to produce records responsive to Advocates' requests "promptly," and BPA has failed to adhere to the statutory requirements. Therefore, Advocates is entitled to summary judgment declaring BPA violated FOIA's prompt production requirement.[5]

\\\\\
\\\\\

---

[5] This is consistent with a recent opinion from this court holding an agency violated the prompt production requirement of FOIA when the agency failed to provide responsive records for over seven months after acknowledging plaintiff's request. *W. Res. Legal Ctr.*, 2020 WL 6829767, at *6-7.

II. <u>Advocates' Proposed Production Schedule of 5,000 Pages Per Month Is Unreasonable</u>

District courts have discretion to set production schedules they deem reasonable when an agency has improperly withheld agency records. 5 U.S.C. § 552(a)(4)(B); *see also Clemente v. Fed. Bureau of Investigation*, 71 F. Supp. 3d 262, 269 (D.D.C. 2014); *Am. Civ. Liberties Union of Washington v. U.S. Dep't of Justice*, No. C09-0642RSL, 2010 WL 11692313, at *1 (W.D. Wash. Jan. 19, 2010). In so doing, courts consider the need and urgency of the request, *Sierra Club*, 2018 WL 10419238, at *6; *Clemente*, 71 F. Supp. 3d at 269, and the agency's processing capacity, *Middle E. Forum v. U.S. Dep't of Homeland Sec.*, 297 F. Supp. 3d 183, 184–85 (D.D.C. 2018); *Nat'l Day Laborer Org. Network v. U.S. Immigr. & Customs Enf't*, 236 F. Supp. 3d 810, 819-20 (S.D.N.Y. 2017).[6]

Advocates asserts need and urgency is demonstrated here regarding the EIM requests because BPA is expected to issue a final decision regarding EIM by the end of September 2021 (Second Missel Decl. Ex. 29, at 12), and Advocates fears it would not receive responsive records in time for them to be useful (Pl.'s Reply at 33). The court addressed this issue at the March 11, 2021 Status Conference by requiring BPA to produce EIM-related records by July 30, 2021. (Minutes of Proceedings.) Given that the production schedule for EIM-related documents has already been set, any additional production schedule ordered herein applies only to the second request, regarding the CRSO BiOp and CRSO EIS, and the sixth request, regarding BPA contracts with customers.

\ \ \ \ \

---

[6] As explained above, burden on the agency does not provide an excuse when it comes to agency liability for violating FOIA. *Supra* Part IB. However, the agency's ability to meet a production schedule must be considered when determining a reasonable schedule.

Page 13 – OPINION AND ORDER

Unlike the EIM documents, it is not clear there is a pressing need for the remaining documents warranting Advocates' requested production schedule. Advocates stated "[w]hatever utility [the EIS/BiOp-related] records might have will be severely diminished by" April 2022, BPA's anticipated completion date for the second request at the time Advocates filed the Motion. (Pl.'s Mot. at 32.) This statement, however, does not provide the court with a clear understanding of Advocates' time-sensitive need for the records. Further, BPA now anticipates completing the second request by September 24, 2021, significantly sooner than initially estimated. (Second Status Report Apx. A.) Similarly, Advocates has not articulated a time-sensitive need for the information requested in the sixth request, to which BPA expects to respond fully by October 21, 2021. (*Id.*) In its Response to BPA's Second Status Report, Advocates discussed only its urgent need for EIM-related documents and did not mention information requested in the second or sixth requests. (*See* Pl.'s Resp. to Def.'s Second Status Report, ECF No. 40, at 2.)

For the second request, BPA identified 630 pages of responsive records and produced 102 of those pages on December 28, 2020. (Second Status Report ¶ 3.)[7] As of March 1, 2021, BPA estimated it would produce all responsive pages by September 24, 2021. (*Id.* Apx. A.) For the sixth request, BPA's initial search yielded 1,996 pages. (*Id.*) As of March 1, 2021, BPA had not yet begun processing these pages "because of [the request's] position in the agency's complex request response queue." (*Id.* ¶ 7.) At that time, BPA estimated it would produce all responsive

---

[7] BPA stated its original search resulted in 9,836 pages. (Second Status Report ¶ 3.) When BPA applied Advocates' search terms, there were 6,657 pages. (*Id.*) After these pages were reviewed for duplicates and non-responsive records, 630 pages of responsive records remained. (*Id.*) The Second Status Report does not make clear the number of responsive pages yielded when the search terms are *not* applied. Advocates has not agreed to limit its request to the records yielded by the search terms and notes it may agree to this limitation later (Pl.'s Reply at 26), but it has not demonstrated that BPA's use of search terms or the search terms themselves are inappropriate.

pages by October 21, 2021. (*Id.* Apx. A.) Once BPA produces the records relating to EIM, there will be only 2,524 pages of responsive documents outstanding, which BPA anticipates will be produced by October 21, 2021.

BPA has cooperated with status conferences and status reports and indicates it "intends to continue working with Plaintiff to release the requested records as expediently as possible." (Palen Decl. ¶ 7.) Once BPA has complied with the court's March 11, 2021 order, Advocates will be waiting on fewer than 5,000 pages total. Regardless of how one views the burden on the agency, there is no need to order BPA to produce 5,000 pages per month, almost twice the number of total outstanding pages. Therefore, Advocates' requested production schedule is unreasonable and is denied. BPA's alternative proposed production schedule of 1,000 per month is granted. The first batch of 1,000 pages is due August 31, 2021, one month after all EIM-related documents must be produced. Under this schedule, BPA will produce all records by October 31, 2021.

*Conclusion*

Based on the foregoing, Advocates' motion for summary judgment (ECF No. 21) is GRANTED IN PART and DENIED IN PART as set forth above. BPA is to comply with the court's March 11, 2021 order to produce all EIM-related documents by July 30, 2021. BPA is to produce 1,000 responsive pages each following month, with the first 1,000 pages due August 31, 2021.

IT IS SO ORDERED.

DATED this 2nd day of June, 2021.

JOHN V. ACOSTA
United States Magistrate Judge